Argued and submitted March 24, reversed June 16,
reconsideration denied July 22,
petition for review allowed September 23, 1980

# FEDERATION OF INDEPENDENT SEAFOOD HARVESTERS, et al,

*Petitioners,*

*v.*

# OREGON FISH AND WILDLIFE COMMISSION, et al,

*Respondents.*

(CA 15351)

612 P2d 765

Bruce H. Anderson, Eugene, argued the cause for petitioner All-Coast Fishermen's Marketing Association. With him on the briefs were D. Michael Wells and Coons & Anderson, Eugene.

Jeffrey P. Foote, Portland, argued the cause for petitioner Oregon Environmental Council. With him on the brief was John J. Haugh, Portland.

No appearance for petitioner Federation of Independent Seafood Harvesters.

Frank W. Ostrander, Assistant Attorney General, argued the cause for respondent Oregon Fish & Wildlife Commission. With him on the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Beverly B. Hall, Assistant Attorney General, Salem.

James H. Clarke, Portland, argued the cause for respondent Crown Zellerbach Corporation. With him on the brief were Frank M. Parisi and Spears, Lubersky, Campbell & Bledsoe, Portland.

Richard P. Brenner, Portland, filed a brief amicus curiae for 1000 Friends of Oregon.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

All-Coast Fisherman's Marketing Association and the Oregon Environmental Council petition for judicial review of an Oregon Fish and Wildlife Commission order that Crown Zellerbach Corporation (Crown) be issued permits, under ORS 508.700 to 508.745, for a private salmon hatchery. The permits authorize Crown to construct and operate what the Commission describes as a "release/recapture salmon facility" at Tillamook Bay, into which Crown proposed to release each year up to five million each of chinook and coho salmon smolts.

One of the principal factual disputes at the hearing held on the permit applications (at which petitioners appeared as intervenors and were accorded party status) was the effect the annual releases would have on the ecology of Tillamook Bay. The Commission stated in its Findings of Facts:

> "There is evidence in the record that Chinook and Coho salmon smolts which are released into an estuary at extremely small sizes may have a tendency to residualize in the estuary rather than to migrate immediately out to the ocean. There is also evidence in the record that residualized smolts would compete with local indigenous stocks for available food and space. There is some evidence in the record to support Applicant's [i.e., Crown's] contention that its smolts would not residualize in Tillamook Bay. *There is insufficient evidence to support a finding either way.*" (Emphasis supplied.)

The Commission further found:

> "The impact of Applicant's proposed program on the internal integrity and fisheries resources of Tillamook estuary cannot be determined without extensive testing in the form of experimental releases of hatchery-raised smolts, coupled with detailed monitoring and samplings throughout the estuary to determine the impact on estuarine resources."

The Commission concluded:

"Because of the lack of conclusive evidence as set forth above, it is impossible to determine at the present time whether or not the issuance of the proposed salmon hatchery permits would violate ORS 508.710(1) [&] (4), [1] or Statewide Planning Goal 16."[2]

---

[1] ORS 508.710 provides:

"No permit shall be issued:

"(1) Which may tend to deplete any natural run of anadromous fish or any population of resident game fish.

"(2) Which may result in waste or deterioration of fish.

"(3) If the proposed operation is to be located on the same stream or river or tributary thereof on which a state or federal fish culture facility is established or is planned to be established.

"(4) If the proposed operation is not consistent with sound resource management and is not in close proximity to the ocean.

"(5) If the commission determines the applicant does not have the financial capability to successfully construct and operate the hatchery or may not properly conduct the operation authorized under the permit."

[2] The reference is to Statewide Planning Goal No. 16 on Estuarine Resources, adopted by the Oregon Land Conservation and Development Commission (LCDC), pursuant to ORS 197.225 and promulgated at OAR 660-15-010(1). The Overall Statement provides, in part:

"Estuary plans and activities shall protect the estuarine ecosystem, including its natural biological productivity, habitat, diversity, unique features and water quality. Dredge, fill, or other reduction or degradation of these natural values by man shall be allowed only:

"(1) if required for navigation or other water-dependent uses that require an estuarine location; and

"(2) if a public need is demonstrated; and

"(3) if no alternative upland locations exist; and

"(4) if adverse impacts are minimized as much as feasible."

It is further provided as one of the goal's Implementation Requirements:

"(1) Unless fully addressed during the development and adoption of comprehensive plans, actions which would potentially alter the integrity of the estuarine ecosystem shall be preceded by a clear presentation of the impacts of the proposed alteration, and a demonstration of the public's need and gain which warrant such modification or loss."

The Commission nevertheless ordered issuance of the permits for the purpose of conducting (at Crown's expense) the "extensive testing" described above, on the condition that

"[r]elease of salmon smolts raised by Applicant will be discontinued or otherwise adjusted if the studies demonstrate that the releases are having an adverse impact on the fisheries or other biological resources of the Tillamook estuary."

We review the Commission's order under ORS 183.482(8).

Petitioners' principal contentions are that in ordering issuance of the permits on the inconclusive evidence of the effects on Tillamook Bay, the Commission erroneously interpreted ORS 508.710(1) and (4), and ORS 197.180(1),[3] so far as it requires Commission compliance with Statewide Planning Goal No. 16. Because our decision under ORS 508.710 is dispositive of the matter, we will not consider petitioner's further claim that the goal was violated.

The pivotal issue presented by petitioners' claims under ORS 508.710(1) and (4) is whether the Commission was required to resolve the considerations described therein in favor of the applicant before the permits could be issued. ORS 508.710 provides:

"No permit shall be issued:

---

Tillamook Bay has been classified by LCDC as a "shallow-draft development estuary", OAR 660-17-015(1)(c); and in OAR 660-31-010(3) and Appendix 1 thereto, salmon hatchery permits have been specifically designated by LCDC as among the "programs affecting land use" alluded to in ORS 197.180(1), which bound the Fish and Wildlife Commission to observe in this proceeding the Goal 16 requirements set out above. ORS 197.180(1) provides:

"State agencies shall carry out their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use in accordance with statewide planning goals approved pursuant to ORS 197.005 to 197.430 and 469.350."

[3] See n 2.

"(1) Which may tend to deplete any natural run of anadromous fish or any population of resident game fish.

"* * * * *

"(4) If the proposed operation is not consistent with sound resource management and is not in close proximity to the ocean."

Petitioners contend that the Commission was required to make findings on the above before issuance of the permits. Crown and the Commission assert that the Commission's professed inability to resolve the issues presented by the statute means that grounds for denying the permits were not established and that the Commission therefore could issue the permits under ORS 508.700(1).[4]

While the Commission has great latitude in determining whether to issue permits, it can not ignore the constraints in ORS 508.710. It is clear, moreover, that in providing that "[n]o permit shall be issued" that may have the consequences proscribed by ORS 508.710(1) and (4), the statute requires the Commission to find that the statutory constraints will not be violated before it issues a permit.

Respondents argue that the Commission attached stringent conditions to the permits to protect the values implied by subsections (1) and (4) and that in any event a wide range of corrective action by the Commission is authorized under ORS 508.720 if it should later determine that those values are endangered by Crown's hatchery operation. However,

---

[4] At the time of this proceeding, ORS 508.700(1) provided:

"(1) The commission may issue a permit, subject to such restrictions and regulations as the commission deems desirable, to any person to construct and operate a hatchery for:

"(a) Chinook salmon, also known as Oncorhynchus tshawytscha; or

"(b) Chum salmon, also known as Oncorhynchus keta or dog salmon; or

"(c) Silver salmon, also known as Oncorhynchus kisutch or coho salmon."

the most that argument establishes is that the permits contain conditions and the Commission has remedies that are allowable in any event under ORS 508.715 and 508.720. The existence of those conditions and remedies pertaining to a hatchery's operation is no substitute for the determinations the Commission must make before it can authorize the hatchery's construction.

We do not agree with respondents' contention that the inconclusive evidence before the Commission on the ORS 508.710(1) and (4) issues means that grounds for denying the permits were not established and that therefore the permits could be issued. Inconclusive evidence means that *nothing* has been established. The determinations required to be made under ORS 508.710 impose the responsibility on the Commission not to issue any permit in the absence of findings based on substantial evidence consistent with ORS 508.710. When, as here, the Commission finds the evidence insufficient to make the required findings, it cannot issue any permit. It has authority, if it chooses to do so, to conduct the research required to obtain the information it needs. *See, e.g.,* ORS 496.146(11) and 506.136(1).[5] But it cannot grant permits as a means to acquire the very information it needs to determine whether to issue the permits in the first place. *Cf. Kids Against the Cut v. Wage and Hour Comm.,* 41 Or App 179, 597 P2d 1264 (1979).

---

[5] ORS 496.146(11):

"In addition to any other duties or powers provided by law, the commission:

"* * * * *

"(11) May enter into contracts with any person or governmental agency for the development and encouragement of wildlife research and management programs and projects."

ORS 506.136(1):

"The commission shall:

"(1) Investigate the habits, supply and economic uses of, and classify all food fish."

In summary, we conclude that the Commission "erroneously interpreted a provision of law", ORS 183.482(8)(a), by deciding it could issue the hatchery permits without first making the findings required under ORS 508.710. Given the Commission's conclusion that it could not make the required findings from the evidence presented, the error under ORS 508.710(1) could not be cured on a remand. Thus, ORS 183.482(8)(a)(A) requires that the Commission's order be reversed.

Reversed.