Argued and submitted December 2, 1980,
affirmed August 4, 1981

FEDERATION OF INDEPENDENT
SEAFOOD HARVESTERS et al,
*Respondents,*

*v.*

OREGON FISH AND
WILDLIFE COMMISSION et al,
*Petitioners.*

(CA 15351, SC 27154)

632 P2d 777

James H. Clarke, Portland, argued the cause for petitioner Crown Zellerbach Corporation. With him on the petition were Frank M. Parisi, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Al Laue, Assistant Attorney General, Salem, argued the cause for petitioner Oregon Fish and Wildlife Commission. On the brief were James A. Redden, Attorney General, Walter Barrie, Solicitor General, Frank W. Ostrander and Beverly B. Hall, Assistant Attorneys General, Salem.

Bruce H. Anderson, Eugene, argued the cause for respondent All-Coast Fisherman's Marketing Assn. With him on the briefs were D. Michael Wells, and Coons & Anderson, P.C., Eugene.

Jeffrey P. Foote, Portland, argued the cause for respondent Oregon Environmental Council. With him on the brief was John J. Haugh, Portland.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Campbell, Justices.

LENT, J.

### LENT, J.

The issue is whether the Fish and Wildlife Commission (Commission) is required to make findings that the tests set forth in ORS 508.710[1] will be complied with before issuing hatchery permits. We hold that the Commission must make such findings.

### Facts

On December 29, 1977, Crown Zellerbach Corporation (Crown), applied to the Department of Fish and Wildlife (Department)[2] for a permit to construct and operate a release/recapture salmon hatchery facility on Tillamook Bay at Miami Cove in Garibaldi. On October 19, 1978, the Commission granted Coast Fisherman's Marketing Association's (All-Coast) and Federation of Independent Seafood Harvesters', Inc., (Federation) petitions to intervene. On October 24, 1978, the Commission granted petitioner Oregon Environmental Council's (OEC) petition to intervene. On November 14-21, 1978, the Director of the Department conducted hearings on the application under contested case procedures. ORS 183.413-183.470. On April 13, 1979, the Department recommended denial of the permit to the Commission.[3] On June 22, 1979, the Commission issued final

---

[1] ORS 508.710(1) and (4):

"No permit shall be issued:

"(1) Which *may tend* to deplete any natural run of anadromous fish or any population of resident game fish.

"\* \* \* \* \*

"(4) If the proposed operation is not consistent with sound resource management and is not in close proximity to the ocean.

" \* \* \* \* \*." (Emphasis added.) ·

[2] OAR 635-40-110(e) requires all applications to be filed with the Department. The Department then reviews and makes recommendations to the Commission respecting permit issuance. OAR 635-40-115. The Commission then holds public hearings on the applications pursuant to ORS 508.705. The Commission may, as in the case at bar, designate the Director of the Department to conduct the hearings. OAR 635-40-170.

[3] The Commission has de novo review of the Department's actions with regard to hatchery permits. The Commission can amend the Department's proposed findings of fact, conclusions of law, and orders. ORS 183.464(1). It is also the Commission rather than the Department which has authority to issue hatchery permits under ORS 508.700.

findings of fact, conclusions of law, and an order which provided for permit issuance.[4] All-Coast's, Federation's and OEC's petitions for judicial review were filed before August 31, 1979. On review, the Court of Appeals reversed the Commission's decision and held that before issuing hatchery permits, the Commission must make findings that the tests set forth in ORS 508.710 will be complied with. *Fed. of Seafood Hrvstrs. v. Fish & Wildlife Comm.,* 46 Or App 659, 612 P2d 765 (1980).

## Scope of Review

Judicial review will be exercised under the 1979 amendments to the Administrative Procedures Act (APA) even though these amendments did not become effective until after the petition for review had been filed. We have so held in *Megdal v. Board of Dental Examiners,* 288 Or 293, 317, 605 P2d 273 (1980). The relevant judicial review provision is ORS 183.482(8)(a):

"* * * If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A)   Set aside or modify the order; or

---

[4] The Commission's Findings of Fact, Conclusion of Law and Order:

### FINDINGS OF FACT

" * * * * *

"10. The impact of Applicant's proposed program on the internal integrity and fisheries resources of Tillamook estuary cannot be determined without extensive testing in the form of experimental releases of hatchery-raised smolts, coupled with detailed monitoring and samplings throughout the estuary to determine the impact on estuarine resources.

### CONCLUSION OF LAW

"Because of the lack of conclusive evidence as set forth above it is impossible to determine at the present time whether or not the issuance of the proposed salmon hatchery permits would violate ORS 508.710(1)(4), or Statewide Planning Goal 16.

### ORDER

"Since it appears that the only way of determining whether or not Applicant's proposed program will have a detrimental effect on the estuarine resources is to conduct an experimental hatchery release program, coupled with adequate testing and monitoring, it is ordered that the proposed Chinook and Coho salmon hatchery permits for five million fish each be issued subject to [detailed conditions]."

"(B)   Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *"

■       Crown contends that review should not be governed by contested case provisions of the APA. It argues that since ORS 508.705(1)[5] requires holding only a "public hearing" prior to permit issuance, something less than a contested case hearing is required. It argues further that since a lesser procedure than a contested case hearing is required, review should not be governed by APA contested case provisions. Under this theory, Crown contends that the Commission was not required to issue any findings and therefore there is no issue as to what findings are required.[6] We need not here determine what procedures are mandated by ORS 508.705. ORS 183.482 provides for review of "contested cases." ORS 183.310(2)(a) defines a contested case as

"a proceeding before an agency

"* * * * *

"(D)   Where the agency by rule or order provides for hearings substantially of the character required by ORS 183.415, 183.425 and 183.450 to 183.470."

ORS 183.310(4)(a) defines "order" as "any agency action expressed orally or in writing directed to a named person * * *." The Department's conducting of what it referred to as "a contested case hearing" from November 14 to November 21 constitutes a contested case for purposes of judicial review under ORS 183.482. Since a contested case hearing was held, findings are mandated by ORS 183.470(2).

**Requirement of Findings for Hatchery Permit Issuance**

■       The Court of Appeals held that hatchery permits can be issued only where the Commission has made findings that the tests set forth in ORS 508.710 will be complied with upon permit issuance. Crown, on the other hand,

---

[5] ORS 508.705 provides in part:

"(1) Prior to issuance of any permit by the commission, a public hearing shall be held. * * *"

[6] ORS 183.470(2) requires final orders in contested cases to be accompanied by findings of fact and conclusions of law.

contends that the Commission can issue permits so long as there has been no finding that the tests set forth in ORS 508.710 will be violated upon permit issuance. Under Crown's theory, the Commission can issue permits where (1) there has been an affirmative finding that the tests set forth in ORS 508.710 will be complied with upon permit issuance, or (2) where the Commission finds that it is unable to make a determination whether the tests set forth in ORS 508.710 will be complied with. This court must determine the proper interpretation of ORS 508.710. We uphold the Court of Appeals' interpretation of the statute.

The statute's legislative history demonstrates a strong determination to protect Oregon's natural anadromous fish. Robert Schoning, then director of the Commission, explained the bill to the Senate Fish & Game Committee as "allow[ing] the Fish Commission to control all factors we believe necessary to *insure* that no damage will be done to natural or artificially maintained stocks of fish in the State of Oregon."[7] (Emphasis added.) Representative Hanneman, one of the bill's sponsors, also noted that "a great deal of care [has been] taken to insure that the public interest and the existing fishery stock is protected."[8] ORS 508.710 must be read in light of the legislative intent to insure protection of the fishery resource.

"The burden of presenting evidence to support a fact or position in a contested case rests on the proponent of the fact or position." ORS 183.450(2). Crown's interpretation of ORS 508.710 is that an applicant does not have to establish that the tests set forth in ORS 508.710 would be complied with to receive a permit. Under this interpretation, the Commission could issue permits based on virtually no evidence setting forth findings that it was unable to make a determination whether the tests set forth in ORS 508.710 would be complied with. As a practical matter, the burden of presenting evidence would then fall on the agency or an outside interest group to establish that the tests set

---

[7] Hearings on HB 1328 Before the Senate Fish & Game Committee, 56th Legis Ass'y (April 20, 1971) (prepared statement of Robert Schoning).

[8] Hearings on HB 1328 Before the Senate Fish & Game Committee, 56th Legis Ass'y (February 18, 1971) (statement of Representative Hanneman).

forth in ORS 508.710 would be violated upon permit issuance. Shifting the burden of presenting evidence from the applicant to the Commission or an outside interest group is inconsistent with the legislative intent to insure protection of the fishery resource.

The plain reading of ORS 508.710 also militates against adopting Crown's interpretation. ORS 508.710(1) provides that "No permit shall be issued: [w]hich *may tend* to deplete any natural run of anadromous fish or any population of resident game fish." (Emphasis added.) Read together, "may" and "tend" indicate a legislative intent to err on the side of not issuing rather than of issuing permits. Crown cites *Corn Products Co. v. Comm'n.*, 324 US 726, 738, 65 S Ct 961, 89 LEd 1320 (1944), for the proposition that "may tend" is a standard of reasonable probability or likelihood. In that case, the U.S. Supreme Court interpreted a Clayton Act provision prohibiting agreements the effect of which "*may* be to *substantially* lessen competition," (emphasis added) as not prohibiting discriminations having the "mere possibility" of those consequences, but as reaching those which would probably have the defined effect on competition. The Oregon Legislature did not use the word "may" alone in ORS 508.710; it added the word "tend." To give this word effect, we interpret ORS 508.710 as a protective statute, allowing the Commission to issue permits only where it affirmatively finds that permit issuance will not be injurious to existing fish populations.

■ Crown contends that the Commission's discretion to prescribe the terms of a permit and to supervise hatchery operations is inconsistent with requiring findings that the tests set forth in ORS 508.710 will be complied with before issuing private hatchery permits. We find no such inconsistency. ORS 508.710 is a preventive provision, providing for issuance of permits only in delineated circumstances. ORS 508.715 - 508.720 are remedial provisions, attempting to protect the public interest to the greatest extent possible

once the decision has been made to grant a hatchery permit.[9] Neither is a substitute for the other.[10]

Crown finally urges this court to adopt its interpretation of ORS 508.710 because any other interpretation would frustrate the legislative intent to permit development of private hatcheries. It accurately cites legislative history which demonstrates that the salmon runs were threatened with extinction; the legislature wanted to encourage private investment in salmon hatcheries; and the legislature knew that available data about salmon aquaculture was limited. Crown contends that the legislative desire to spur private investment in an area where there is little present knowledge is inconsistent with a requirement that findings be made under ORS 508.710. In the case at bar, the Commission found that

" * * *[t]he impact of Applicant's proposed program on the internal integrity and fisheries resources of Tillamook estuary cannot be determined without extensive testing in the form of hatchery raised smolts coupled with detailed monitoring and samplings throughout the estuary to determine the impact on estuarine resources."[11]

That the findings mandated by ORS 508.710 cannot be made with regard to this particular hatchery does not mean that the legislature did not intend those findings be made. Representative Hanneman was aware that the statute was so protective as to potentially bar issuance of all permits. He stated before the Senate Fish & Game

---

[9] ORS 508.720(1) provides in part that "If the commission finds that the operation described in the permit is not in the best public interest, it may alter the conditions of the permit to mitigate such adverse effects or may cause an orderly termination of the operation under the permit." If the Commission makes these findings and wishes to alter or terminate a permit, it bears the burden of demonstrating that the operation is not in the best public interest.

[10] Compare Office of Communication of United Church of Christ v. F.D.C., 359 F2d 994 (DC Dir 1966), interpreting the Communications Act of 1934, 47 USC § 309 (e) which provided that the Commission must set a renewal application for hearing where "the Commission for any reason is unable to make the finding" that the public interest, convenience and necessity will be served by the license renewal. In that case, the court held that where the FCC was unable to make the statutorily required finding, it could not issue a license without a hearing merely by placing conditions upon the license which the Commission felt would protect the public interest.

[11] See note 3 supra.

Committee that "We tightened the bill down significantly in many areas, and we hope not so tight that there will be no opportunity for anyone to get a license at all."[12]

While the legislature did not wish to foreclose permits for salmon hatcheries which would not risk the kinds of harm listed in ORS 508.710, we conclude that it did not contemplate the issuance of such permits on an experimental basis as a way to acquire the data necessary to make findings whether such risks would prove real. *Kids Against the Cut v. Oregon Wage & Hours Commission,* 41 Or App 179, 579 P2d 1264 (1979). If the findings can never be made, it is the legislature's prerogative to rewrite the statute.

## Requirement of Consistency with Statewide Planning Goals

■   An alternative ground for our decision is the failure of the Commission to make findings that issuance of this hatchery permit is consistent with statewide planning goal 16.[13] Crown contends that the Commission is precluded from issuing hatchery permits only where it affirmatively finds that permit issuance is *inconsistent* with one of the statewide planning goals. Under this theory, the Commission could issue permits where (1) there has been an affirmative finding that statewide planning goals will be complied with, or (2) where the Commission finds that it is unable to make a determination whether statewide planning goals will be complied with. Statewide planning goal 16 requires local government units and state agencies to "recognize and protect the unique environmental, economic and social values of each estuary and associated wetlands * * *." ORS 197.180(1) requires state agencies to " * * * take actions that are authorized by law with respect to programs affecting land use *in accordance with* statewide planning goals." (Emphasis added.) The Commission is a state

---

[12] Hearings on HB 1328 Before the Senate Fish & Game Committee, 56th Legis Ass'y (April 20, 1971) (statement of Representative Hanneman.)

[13] Statewide planning goals are mandatory statewide land use planning standards adopted by the Land Conservation and Development Commission pursuant to ORS 197.005 to 197.430.

agency taking an action authorized by law. *See* ORS 508.700.[14] It is not disputed that issuance of this permit is an action affecting land use. The issue is whether the language "in accordance with" requires state agencies to make findings that their actions affecting land use are consistent with statewide planning goals. We hold that it does. This language places on agencies the duty to make findings that their actions are consistent with statewide planning goals. The Commission's finding that the evidence is inconclusive is insufficient to meet this statutory requirement.

Affirmed.

---

[14] ORS 508.700(1) provides in part that

"The commission may issue a permit, subject to such restrictions and regulations as the commission deems desirable, to any person to construct and operate a hatchery * * *."