Argued and submitted February 3, ballot title revised February 15, 1984

## OREGON AQUA-FOODS, INC.,
*Petitioner,*

*v.*

## PAULUS,
*Respondent.*

### (SC S30367)

676 P2d 870

John A. Lien, Salem, argued the cause and filed the Petition for petitioner.

John A. Reuling, Jr., Special Counsel to the Attorney General, Salem, argued the cause and filed the Memorandum in Answer to Petition to Review Ballot Title. With him on the Memorandum were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Peterson, Chief Justice, and Lent, Campbell, Roberts, Carson and Jones, Justices.

PER CURIAM

## PER CURIAM

Petitioner, Oregon Aqua-Foods, Inc.,[1] challenges the ballot title prepared by the Attorney General and certified to the Secretary of State for an initiative that would add provisions to Oregon law relating to salmon and steelhead resources.[2] Pursuant to ORS 250.035 and 250.065, the Attorney General drafted this ballot title:

"IMPOSES ADDITIONAL LIMITS AND REGULATIONS ON COMMERCIAL SALMON HATCHERY OPERATIONS

"*Question:* Shall statute prohibit commercial salmon hatchery practices which might deplete natural salmon/steelhead runs, cause different commercial/natural run characteristics?

"*Explanation:* Measure requires aggressive salmon/steelhead program similar to present propagation and enhancement program. Prohibits commercial salmon hatchery practices which might deplete natural salmon/steelhead runs

---

[1] Oregon Aqua-Foods, Inc., is a wholly-owned subsidiary of the Weyerhaeuser Company, engaged in operating a commercial salmon hatchery.

[2] The initiative measure states:

"BE IT ENACTED BY THE PEOPLE OF THE STATE OF OREGON:

"The laws of the State of Oregon are amended as follows:

"(1) The Oregon Department of Fish and Wildlife shall begin an aggressive propagation and enhancement program, and place priority on the restoration of the most depressed salmon and steelhead runs contributing to the public fishery in Oregon.

"(2) A person or corporation holding a salmon hatchery permit under ORS 508 shall not take any action which tends to deplete any natural run of salmon of [sic] steelhead or any population of resident game fish.

"(3) In additon [sic] to the provisions of subsection (2) of this section, a person or corporation holding a salmon hatchery permit shall not release fish at non-traditional times, or practice genetic altering or acceleration of the life-cycle of fish that may cause a change in the size, migration pattern, or times of return from the ocean that differs significantly from a natural run in an affected watershed.

"(4) If it is determined that the operation of a salmon hatchery permit is violating the provisions of subsection (2) or (3) of this section, the Oregon Fish and Wildlife Commission shall cause an orderly termination of the operation under that permit according to existing law. If a permit is terminated under this subsection, the Department shall levy an assessment against the permit holder in an amount deemed necessary to return the fish run or population to its former condition.

"(5) All assessment revenues from subsection (4) shall be deposited to the credit of the Salmon and Trout Enhancement Program or a similar presmolt planting program, to restore the natural fish run or population."

or game fish populations. Prohibits commercial salmon hatchery genetic altering or accelleration [sic] of salmon life cycle, significantly changing release times, size, migration patterns or return times from natural runs. Violation requires orderly termination of hatchery operation, and assessment of amount needed to return fish run or population to its former condition."

Petitioner challenges the ballot title as "insufficient and unfair" contending that the ballot title does not comply with the requirements for impartiality, conciseness, and accuracy and oversteps the terms of the measure. Petitioner requests that the following ballot title be adopted and certified by this court:

"*IMPOSES RESTRICTIONS ON COMMERCIAL SALMON HATCHERY OPERATIONS*

"*Question:* Shall statute restrict commercial salmon hatchery practices which may tend to deplete natural salmon, steelhead or game fish runs?

"*Explanation:* Directed to commercial salmon hatchery operations. Further restricts commercial salmon hatchery practices which may tend to deplete natural runs of salmon, steelhead or resident game fish. Restricts commercial salmon hatcheries: 1) from releasing fish at non-traditional times; 2) from altering fish life cycles which may cause a change in fish size or migration different from that of a natural run. Violation requires hatchery permit termination and levy assessment."

■ Apparently, the measure seeks to add additional language to existing statutes, with the effect of changing present law primarily relating to the issuance and termination or alteration of permits for commercial salmon hatchery operations.[3]

---

[3] In his Answering Memorandum in behalf of respondent, the Attorney General calls the attention of the court to the inconsistency in the measure by referring to the measure as an amendment with no attempt to comply with Article IV, section 22, of the Oregon Constitution, which specifically requires the law to be amended to be "* * * set forth, and published at full length." However, as correctly noted by the Attorney General, the efficacy of the proposed measure, should it be adopted by the people, is not now before us. *Oregon AFL-CIO v. Weldon,* 256 Or 307, 312-13, 473 P2d 664 (1970); *Johnson v. City of Astoria,* 227 Or 585, 591-92, 363 P2d 571 (1961); *Unlimited Progress v. Portland,* 213 Or 193, 195-96, 324 P2d 239 (1958); *State ex rel. Stadter v. Newbry,* 189 Or 691, 697-98, 222 P2d 737 (1950); *State ex rel. Carson v. Kozer,* 126 Or 641, 270 P 513 (1928).

## THE CAPTION

■ Petitioner contends that the reference to the imposition of additional "limits and regulations" being proposed by the measure is incorrect because the legislature does not impose regulations, and, further, the use of the word "regulations," following the word "limits," is redundant if "regulations" means the same thing as "limits." We agree that the proposed caption does not sufficiently inform the voter that the initiative would impose additional *statutory* restrictions on commercial salmon hatchery operations.

Consequently, with the insertion of the word "additional," the caption suggested by petitioner meets the statutory requirement. The caption would read:

*"IMPOSES ADDITIONAL RESTRICTIONS ON COMMERCIAL SALMON HATCHERY OPERATIONS"*

## THE QUESTION

At the time of argument, petitioner focused its attention on the words chosen by the Attorney General qualifying the acts of the commercial salmon hatchery to be prohibited. The Attorney General chose the words "which might deplete" the salmon and steelhead runs. Petitioner contends that that phrase is qualitatively different from the phrase in the initiative itself which uses the words "which tends to deplete." To the extent that the words chosen by the Attorney General differ from those in the initiative measure, we find the proposed question to be insufficient. The argument by the Attorney General that the "fine shades of meaning" will be lost on the voter is not persuasive.

■ Initially, petitioner suggested the phrase "which may tend to deplete". However, petitioner, recognizing that its proposed ballot title was infected with the same qualification problem, suggested an alternative question at oral argument that would conform to the language used by the sponsors of the measure. We perceive a difference between practices that "might deplete" or "may tend to deplete" from practices that "tend to deplete" the natural salmon and steelhead runs. *See Federation of Seafood Hrvstrs. v. Fish & Wildlife Comm.,* 291 Or 452, 458, 632 P2d 777 (1981).

Petitioner also points out that the focus of the question in the certified ballot title compares the difference between commercial and natural runs of the fish while the measure uses the natural run as the base line. We agree with petitioner that the certified question is a deviation from the standard proposed by the measure.

A sufficient question would be:

"Shall commercial salmon hatchery practices tending to deplete natural salmon/steelhead runs and causing different fish run characteristics be prohibited?"

## THE EXPLANATION

In attacking this aspect of the ballot title, petitioner again raises the use of the words "which might deplete" rather than the terms used in the measure "which tends to deplete." As noted above, we agree with petitioner on this point.

■ Petitioner then challenges the certified explanation by contending that, contrary to the first line in the certified explanation, the measure does not address commencement of an "aggressive" propagation and enhancement program by the Fish and Wildlife Commission. In this contention, petitioner is in error. Apparently, the certified explanation attempts to point out to the voter that existing statutes already deal with the propagation and enhancement of certain fish, including salmon. On this point, the Attorney General is correct. ORS 496.435, 496.440 and 506.109. We do not agree, however, with the conclusion in the certified explanation that the thrust of the first part of the measure is the same as, or similar to, existing statutory mandates. The introduction of the word "aggressive" in the measure appears to be a new, and, perhaps, different emphasis upon existing statutorily-required practices of the Fish and Wildlife Commission.

■ The next challenge made by petitioner to the certified explanation centers on the listing of the specific prohibitions contained in the measure. By compressing the prohibitions into a single series, the certified explanation changes the content of the measure. The measure prohibits the release of fish at "non-traditional times" and further prohibits genetic altering or acceleration of the life-cycle of fish that may cause a change in size, migration pattern or times of return significantly differing from natural runs. The

change wrought by the certified explanation suggests a different prohibition from that expressed in the measure.

An appropriate explanation would read:

"Requires 'aggressive' salmon and steelhead propagation and enhancement program. Principally directed to commercial hatchery operations. Restricts commercial salmon hatchery practices which tend to deplete natural runs of salmon, steelhead or resident game fish. Restricts commercial salmon hatcheries from 1) releasing fish at non-traditional times; and 2) altering fish life-cycles which may cause a change in size, migration pattern or times of return significantly different from natural run. Violations require hatchery permit termination and assessment levy."

As a result of our review, we certify the following revised ballot title to the Secretary of State:

*"IMPOSES ADDITIONAL RESTRICTIONS ON COMMERCIAL SALMON HATCHERY OPERATIONS*

*"Question:* Shall commercial salmon hatchery practices tending to deplete natural salmon/steelhead runs and causing different fish run characteristics be prohibited?

*"Explanation:* Requires 'aggressive' salmon and steelhead propagation and enhancement program. Principally directed to commercial hatchery operations. Restricts commercial salmon hatchery practices which tend to deplete natural runs of salmon, steelhead or resident game fish. Restricts commercial salmon hatcheries from 1) releasing fish at non-traditional times; and 2) altering fish life-cycles which may cause a change in size, migration pattern or times of return significantly different from natural run. Violations require hatchery permit termination and assessment levy."