Argued and submitted March 15, the judgment of the circuit court affirmed March 21, reconsideration denied April 18, 1990

FOSTER et al,
*Plaintiffs-Respondents,*

*v.*

CLARK et al,
*Defendants-Respondents,*

*v.*

CITIZENS FOR UNION AVENUE et al,
*Defendants-Intervenors-Appellants.*

(TC 9002-01034; SC S36962)

790 P2d 1

Henry Kane, Beaverton, argued the cause and filed the briefs on behalf of defendants-intervenors-appellants.

Lawrence Matasar, Portland, argued the cause on behalf of plaintiffs-respondents. With him on the brief was Hoffman, Matasar & Glaeser, Portland.

No appearance for defendants-respondents.

Gregory L. Gudger, Portland, filed a brief on behalf of *amicus curiae* Association of Oregon Black Lawyers.

Greg Wasson, Salem, filed a brief on behalf of *amicus curiae* Greg Wasson.

Before Peterson, Chief Justice, Carson, Presiding Justice, and Jones, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

## GILLETTE, J.

The appeal before us concerns the renaming of a principal north-south thoroughfare in east Portland. The street, long known as Union Avenue, was renamed "Martin Luther King, Jr., Boulevard" by a Portland City Council ordinance passed on April 20, 1989. Thereafter, a group of Portland residents circulated and obtained sufficient signatures to have placed on the May 15, 1990, primary ballot a proposed measure submitting to the voters the following question: "Shall Martin Luther King, Jr. Boulevard be renamed Union Avenue?"[1]

Plaintiffs, two resident voters in the City of Portland, then brought the present declaratory judgment action seeking to have the measure removed from the ballot on the ground that the measure is not "municipal legislation," and therefore is not a proper subject for an initiative measure under Article IV, section 1(5) of the Oregon Constitution.[2] The original defendants in the action were Clark, the Auditor of the City of Portland, and Ervin, the Director of Elections for Multnomah County. Intervenors, the principal sponsors of the measure, were added as defendants at their request.

---

[1] The full text of the proposed measure is as follows:

"BE IT ENACTED BY THE PEOPLE OF
THE CITY OF PORTLAND, OREGON

"Section 1:

"By this Act the name Union Avenue shall be restored in Portland to the street formerly so called 'Union Avenue.'

"Section 2:

"The 'emergency' Ordinance, #161815, passed by the City Council, April 20, 1989, to rename Union Avenue Martin Luther King, Jr. Boulevard, is hereby repealed."

All the arguments presented by the parties in this case focus on Section 1. No one suggests that Section 2 has independent viability.

[2] Article IV, section 1(5) of the Oregon Constitution states:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative, and not more than 10 percent of the qualified voters may be required to order a referendum on legislation."

The circuit court held that the measure must be removed from the ballot because it is not "municipal legislation," and the present appeal followed.[3] We affirm the judgment of the circuit court.

*Chronology*

In summary, the Intervenors' main argument is that the act of the Portland City Council in changing the name of Union Avenue was legislative, not administrative, and therefore subject to reversal by the people through the initiative process. However, the Intervenors' proposed measure does not effectively attack the original act of renaming the street. It purports to again rename the street, this time back to "Union Avenue," but, as we shall explain more fully below, the thrust of this attack is misdirected. It focuses on the wrong ordinance.

Our analysis turns in significant part on the specific chronology in this case. That chronology, including the specific dates claimed by the parties to be pertinent, is as follows:

August 19, 1987 — The Portland City Council adopts Resolution No. 34333, which sets out a general policy for renaming streets in the City of Portland.

April 20, 1989 — The Portland City Council passes Ordinance No. 161815, renaming Union Avenue as "Martin Luther King, Jr., Boulevard."

May 4, 1989 — The Portland City Council passes Ordinance No. 161897, adding Sections 17.93.010 to 17.93.060 to the Portland City Code in order to prescribe a policy and a procedure for renaming streets in the City of Portland.

January 9, 1990 — The proposed measure here at issue, supported by sufficient valid signatures to be placed on the ballot, is filed with defendant Clark.

February 15, 1990 — On advice of the City Attorney, the Portland City Council directs defendant Clark to place the proposed measure on the May 15, 1990, primary ballot.

February 16, 1990 — The present action is commenced.

March 1, 1990 — The trial court enters judgment for plaintiffs.

---

[3] The appeal was certified to this court by the Court of Appeals, and we accepted the certification, on March 9, 1990. *See* ORS 19.210. The case was argued on an expedited basis on March 15, 1990.

March 5, 1990 — Intervenors file their notice of appeal. The Court of Appeals thereafter certified the appeal to this court, and the certification was accepted.

March 15, 1990 — The case is argued before this court, and is taken under advisement.

Intervenors advance three separate arguments for reversal of the trial court. First, they argue that the trial court lacked subject matter jurisdiction. The issue of whether a proposed initiative measure is "municipal legislation," they argue, is not an appropriate one for courts to address unless and until the measure is actually approved by the voters. Second, Intervenors argue that the present controversy was not justiciable, because the original defendants, Clark and Ervin, did not actively dispute whether the measure qualifies for the ballot. Finally, Intervenors argue that the proposed measure is, in fact, "municipal legislation," and therefore is qualified for a place on the ballot. We shall consider each of these arguments in turn.

*Subject Matter Jurisdiction*

Intervenors timely moved for an order dismissing these proceedings on the ground that the trial court lacked subject matter jurisdiction. ORCP 21A(1). The trial court denied the motion. Intervenors assign that denial as error.

In essence, Intervenors' theory is that, because of the importance of the initiative process, this court has created a doctrine under which it will not permit judicial scrutiny of a proposed measure beyond assuring that formal requirements, such as the requisite number of signatures, have been met. In particular, Intervenors rely on the following language from *McGinnis v. Child,* 284 Or 337, 339, 587 P2d 460 (1978):

> "Initiative measures must be placed on the ballot for vote. That they may be invalid or ineffective is not grounds for a court or other official to keep them off the ballot. *State ex rel Carson v. Kozer,* 126 Or 641, 647, 270 P 513 (1928). It was for this reason that we granted the petition for a peremptory writ of mandamus in *State ex rel Umrein v. Heimbigner, City Recorder of Beaverton,* September 19, 1978, SC #25813 (no opinion), and ordered the recorder to put the measure on the ballot. The Court of Appeals followed this principle in *Barnes v. Paulus,* 36 Or App 327, 332, 588 P2d 1120 (1978).

> "The one exception is if the proposed measure is legally

insufficient to be placed on the ballot. An example of this exception is *Kays v. McCall,* 244 Or 361, 481 P2d 511 (1966), in which the petitions for the initiative measure did not have the number of supporting certified signatures required by Art IV, § 1, Oregon Constitution."

*See also Oregon Aqua-Foods v. Paulus,* 296 Or 469, 472 n 3, 676 P2d 870 (1984) ("[T]he efficacy of [a] proposed measure, should it be adopted by the people, is not before [this court in a ballot title review proceeding].").

Intervenors read too much into *McGinnis, Oregon Aqua-Foods* and similar cases.[4] It is true, as those cases hold, that a court will not inquire into the substantive validity of a measure — *i.e.,* into the constitutionality, legality or effect of the measure's language — unless and until the measure is passed. To do otherwise would mean that the courts would on occasion be issuing an advisory opinion.

■ On the other hand, Oregon courts have inquired into whether matters extraneous to the language of the measure itself disqualify the measure from the ballot. This is most obviously true of the requirement that an initiative receive enough qualifying signatures, as *McGinnis* recognizes, but the principle involved extends further. Despite compliance with proper procedures, courts will prevent a measure from being placed on the ballot if the measure is legally insufficient to qualify for that ballot. *See, e.g., City of Eugene v. Roberts,* 305 Or 641, 756 P2d 630 (1988) (although otherwise qualifying, advisory question could not be placed on ballot because it was not a "measure"); *Yamhill County v. Dauenhauer,* 261 Or 154, 492 P2d 766 (1972), *aff'g* 6 Or App 422, 487 P2d 1167 (1971) (county initiative measure properly removed from ballot where effect would have been to overturn previous vote by same electorate on a fiscal matter); *Holmes v. Appling,* 237 Or

---

[4] Other cases sounding a similar theme include *Oregon AFL-CIO v. Weldon,* 256 Or 307, 312-13, 473 P2d 664 (1970) (ballot title review); *Johnson v. City of Astoria et al,* 227 Or 585, 591-92, 363 P2d 571 (1961) (mandamus to require initiative measure to be placed on ballot); *Unlimited Progress v. Portland,* 213 Or 193, 195-96, 324 P2d 239 (1958) (municipal measure); *State ex rel. v. Newbry et al.,* 189 Or 691, 697-98, 222 P2d 737 (1950) (compliance of proposed constitutional amendment with requirement that each constitutional amendment be stated separately); *State ex rel Carson v. Kozer,* 126 Or 641, 645-48, 270 P 513 (1928) (constitutionality of proposed measure will not be decided prior to vote).

546, 392 P2d 636 (1964) ("proposed constitutional amendment" was in fact a new constitution, and therefore not entitled to be placed on the ballot); *Tillamook P.U.D. v. Coates,* 174 Or 476, 149 P2d 558 (1944) (referendum; courts had authority to enjoin placing a referendum on the ballot where such referendum related to administrative matters, not legislation); *Whitbeck v. Funk,* 140 Or 70, 12 P2d 1019 (1932) (referendum; ordinance selecting and designating certain property in the City of Portland for use as a public market and authorizing purchase thereof was not municipal legislation and therefore not eligible to be referred by the people); *Monahan v. Funk,* 137 Or 580, 3 P2d 778 (1931) (referendum; "[a]cts, which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared* * *[; t]he form of the act is not determinative; that is, an ordinance may be legislative in character or it may be administrative").

The two lines of cases described, *supra,* appear to run in different directions. This is especially true when one considers cases such as *Unlimited Progress v. Portland,* 213 Or 193, 195-96, 324 P2d 239 (1958), a case involving an attempt to keep a proposed initiative measure off the ballot both on the ground that the measure was "administrative in nature" and on the ground that the measure was unconstitutional. This court, in rejecting such arguments, said:

> "It is not necessary for us to consider the constitutional validity of the proposed measure as attacked in plaintiffs' complaint. It may be that should this measure receive the approval of a majority of the voters in the city of Portland the reasons for invalidity of the measure set forth in plaintiffs' complaint would void its enforcement. However, if a proposed measure is legally sufficient in that all the provisions of the law relating to initiative measures have been formally complied with so that the measure, regardless of the legality of the subject matter and substance contained therein, will require an administrative official to place it upon the ballot for consideration of the voters, the courts will not interfere with the attempt to enact the measure."

*Id.* at 195.

We adhere to the more recent authorities, such as

*Holmes v. Appling, supra,* as being the more clearly reasoned and stating the correct rule, which is: Courts have jurisdiction and authority to determine whether a proposed initiative or referendum measure is one of the type authorized by Or Const, Art I § 1(5) to be placed on the ballot. This means that a court may inquire into whether the measure is "municipal legislation," because that qualifying language is used in the constitution itself. On the other hand, a court may not inquire into general questions of constitutionality, such as whether the proposed measure, if enacted, would violate some completely different portion of the constitution.

The issue of whether the proposed measure is "municipal legislation" is a proper one for judicial scrutiny. The trial court properly denied Intervenors' motion to dismiss on grounds of lack of subject matter jurisdiction.

### Justiciable Controversy

Intervenors next argue that, even if the subject matter of this case is a proper subject for judicial inquiry as a general matter, it is not a justiciable matter *in this case* because the original defendants did not actively dispute the claim made by plaintiffs. *See Oregon Medical Association v. Rawls,* 281 P2d 293, 574 P2d 1103 (1978) (no justiciable controversy over constitutionality of statute when both "sides" to the case agreed the statute was constitutional, but wanted confirmation of that from court).

Whatever the quality of the present controversy would have been had only the original defendants remained in the action, this case is made justiciable by the participation of Intervenors. They, at least, are actively maintaining legal positions contrary to those of the plaintiffs. The judicial power of the state is therefore properly invoked to resolve the controversy.

### "Municipal Legislation"

Oregon Constitution, Article IV, section 1(5), provides:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner

> of exercising those powers shall be provided by general laws, but cities may provide the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative, and not more than 10 percent of the qualified voters may be required to order a referendum on legislation."

The limitation of the initiative and referendum powers to "municipal legislation" has been spelled out over the years as creating a dichotomy between "administrative" matters, as to which the initiative and referendum are not available, and "legislative" matters, as to which such powers are available. *See, generally, Long v. City of Portland,* 53 Or 92, 98 P 324, 1111 (1908) (recognizing the distinction); *see also Monahan v. Funk, supra,* 137 Or at 587 (explaining that the "administrative" limitation was deemed necessary by the authors of the initiative and referendum because to allow those powers "to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city"). The distinction between "legislative" and "administrative" matters is the distinction between making laws of general applicability and permanent nature, on the one hand, as opposed to decisions implementing such general rules, on the other. *See, e.g., Monahan v. Funk, supra.* Both sides in this case recognize the foregoing principles; they disagree as to how to apply them.

■ Intervenors argue that their proposed measure is "legislation." They base their argument on two different rationales. The first is premised on the conclusion that Ordinance No. 161815, the original decision to rename Union Avenue, has been characterized by the City of Portland itself (in a proceeding before the Land Use Board of Appeals) as being "legislation" in a land use context. From this fact, Intervenors somehow extrapolate the legal conclusion that the initial renaming of the thoroughfare must *have been* "legislation." That the City took such a legal position in some other proceeding before another tribunal cannot establish *as a matter of law* that the decision was "legislation," however. The City could have been wrong. Legal characterization of such actions is ultimately for this court, not the City.

■ Intervenors may be at such pains to establish that

Ordinance No. 161815 is "legislation" because the trial court thought it was "administrative." The court stated:

> "The court finds that the city had a policy in full force and effect at the time and place in question for renaming the street, and that the act that they took to rename Union Avenue was an administrative act * * *."

We think the trial court's analysis is faulty in this regard, not because the enactment of Ordinance No. 161815 was "legislation" — although it may have been — but because characterizing that ordinance one way or the other is irrelevant. The pertinent time for our inquiry is not the date on which that ordinance was adopted, but the date on which *the present proposed measure* was filed.

Whether or not the City in fact had "a policy [concerning the method to be utilized for renaming streets] in full force and effect at the time [Ordinance No. 161815 was enacted]," the City *did* have such a policy (and accompanying procedures) in place at the time the present proposed measure was filed. Portland City Code §§ 17.93.010 through 17.93.060 were enacted by Ordinance No. 161897 on May 4, 1989. Those PCC sections contain a complete scheme for changing Portland city street names, including rules on petition forms, fees, review by various City officials, and final consideration by the City Council.[5] This represents a completed legislative plan, requiring no further legislative contribution. Acts of renaming streets under the policies embodied in the plan thereafter become administrative acts, not legislative. The proposed

---

[5] PCC § 17.93.010 permits streets to be renamed only after a prominent real person who has been dead at least five years. In addition, that section limits the city to renaming a street once per year. PCC § 17.193.030 outlines the procedure an applicant must follow. First, the applicant must convince the City Engineer that the proposed new name qualifies under PCC §§ 17.93.010 and 17.93.020. (PCC § 17.93.020 requires that the street must start and terminate entirely within Portland city limits and that the new name be applied to the entire length of the street.) If the renaming qualifies, the City Engineer provides the applicant with official forms and instructions. The applicant is then required to obtain 2500 signatures from Portland residents or signatures from 75% of the property owners abutting the street. The applicant must also provide a biography of the proposed honoree and make a good faith effort to obtain permission to use the new name from the honoree's survivors. The applicant has 180 calendar days to complete the application process. If the City Engineer accepts the application as timely and complete, the applicant must provide a deposit to cover the costs of the renaming process. Finally, PCC § 17.93.040 provides for public hearings, evaluation by a panel of historians, a survey of street residents, and a final decision by the city council.

measure was not filed until January 9, 1990 — long after the date PCC §§ 17.93.010 through 17.93.060 became the law governing the renaming of streets in Portland.

■    Intervenors also argue that the naming or renaming of a street is inherently "legislation," and they cite several older cases from other jurisdictions that treat such municipal activities as being legislation. We have no quarrel with those authorities, but they are not dispositive here. A city's practice of naming or renaming streets only through specific ordinances may establish that the activity is "legislation" subject to the initiative and referendum process. Another city's practice of naming and renaming streets only through a process akin to that established for the City of Portland by PCC §§ 17.93.010 *et seq.* may establish that the activity is "administrative" and not subject to the initiative and referendum process. The point is, whether a particular municipal activity is "administrative" or is "legislation" often depends not on the nature of the action but the nature of the legal framework in which the action occurs. *See Long v. City of Portland,* 53 Or at 101-02. Here, the measure was proposed at a time when an administrative framework was in place.

    Finally, Intervenors argue that the proposed measure is municipal legislation because the measure it was intended to replace — Ordinance No. 161815 — was legislation when it was enacted. As we already have indicated, however, the nature of Ordinance No. 161815 is not before us. Whatever that action was at the time it was taken, such action could be taken *now* only by compliance with the scheme enacted in later Ordinance No. 161897. Enactment of that later ordinance *was* legislation — a general promulgation of policy, applicable to a wide variety of situations, permanent in character, and requiring primarily administrative acts by various officers of the City to carry it out. Action if taken now under the terms of that later ordinance would be administrative.

    The proposed measure would rename a street, *i.e.,* it would do something that was governed by PCC §§ 17.93.010 *et seq.* at the time the measure was filed. This proposed measure dealt with administrative matters, not legislation. The proposed measure therefore did not qualify for the ballot, because it was not "municipal legislation" under Oregon Constitution, Article IV, section 1(5), and the trial judge was required to so

rule. *Holmes v. Appling, supra; Whitbeck v. Funk, supra; Monahan v. Funk, supra. See also City of Eugene v. Roberts, supra.*[6]

The circuit court was correct in concluding that the proposed measure did not qualify to be placed on the May 15, 1990, primary ballot.

The judgment of the circuit court is affirmed.

---

[6] Intervenors efforts here have been somewhat misdirected. Their purpose is to void the result of Ordinance 161815. Apparently, their earlier efforts to accomplish that goal by referring that ordinance to the people fell short. Now, they claim the right to rename the street, but they have chosen not to follow the procedures now in place for such purposes. It may be that they chose this route in part because they concluded that their goal never could be accomplished under the Portland City Code — renaming Martin Luther King, Jr., Boulevard as "Union Avenue" would not meet the requirement of PCC § 17.93.010 that street be renamed only for a real person. We do not here face, and we express no opinion concerning, a hypothetical proposed measure which, while renaming a specific street, purports to do so in the process of revising PCC §§ 17.93.010 *et seq.*