Argued and submitted January 8, 1996, reversed and remanded January 29, petition for review allowed June 17, 1997 (325 Or 438)
See later issue Oregon Reports

## LANE TRANSIT DISTRICT,
a municipal corporation,
*Respondent,*

*v.*

## LANE COUNTY, OREGON,
a municipal corporation, and Annette Newingham, Chief Deputy County Clerk of Lane County, Oregon,
*Defendants,*

*and*

## CITIZENS FOR RESPONSIBLE PUBLIC TRANSIT,
a registered political action committee,
*Appellant.*

(1695-02904; CA A89559)

932 P2d 81

Susan L. Stoner argued the cause and filed the briefs for appellant.

Joel S. DeVore argued the cause for respondent. With him on the brief was Luvaas Cobb Richards & Fraser, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

Leeson, J., concurring in part; dissenting in part.

**LANDAU, J.**

Citizens for Responsible Public Transit (Citizens) filed a proposed initiative measure that, if enacted, would alter the salary of the general manager of the Lane Transit District (LTD) and revise the procedures by which that salary is increased. LTD brought this action requesting a declaration that the measure was administrative in nature, and therefore not subject to the initiative power, and seeking an injunction preventing Lane County (County) and its Chief Deputy Clerk from putting the measure on the local ballot. Citizens intervened and moved for summary judgment. LTD also moved for summary judgment. The trial court denied Citizens' motion, granted LTD's motion and enjoined the County from placing the measure on the ballot. The court also required Citizens to pay LTD's "labor costs" associated with responding to Citizens' discovery requests during the course of the litigation. Citizens appeals, assigning error to the trial court's rulings on the summary judgment motions and to the order to pay discovery costs. We conclude that the trial court erred in both respects and reverse and remand.

The relevant facts are undisputed. LTD is a mass transit district that serves the Eugene and Springfield areas. It is governed by a board of directors (board), the members of which are appointed by the Governor, subject to confirmation by the state Senate. ORS 267.090. The board, in turn, appoints a general manager, who holds that office indefinitely, subject to removal by the board. ORS 267.135. The general manager is the only LTD employee appointed directly by the board. All others are hired and supervised by the general manager.

The current general manager was hired 16 years ago. Her current annual salary is approximately $77,000. The general manager negotiates her salary with the board each year. The salary is not determined by reference to any particular schedule of ranges or steps. According to the chair of the board, it is instead based on a comparison of compensation for general managers in comparable transit districts. The board also takes into account general principles expressed in a "Salary Administration Policy," which governs

salary determinations for other nonbargaining-unit employees by reference to salary grades and ranges within each grade as determined by a salary administration committee that is chaired by the general manager. Those general principles include a commitment to "fair and equitable compensation based on the relative value of each position within LTD," with due consideration to "rates of pay in like positions, for comparable work in the marketplace, and the District's financial position." However, by its terms, the Salary Administration Policy does not govern the determination of the general manager's salary; it describes policies that the general manager is to implement in setting salaries of employees subject to her authority. Nevertheless, there was uncontradicted testimony that, in the past, the board has taken into account some of the general considerations contained in the policy in setting the general manager's salary.

Unhappy with the general manager's current salary and the method by which it has been determined, Citizens filed a proposed initiative measure containing the following language:

"The people of Lane Transit District ordain as follows:

"**Section 1.**   The qualifications do not justify the salary and benefits provided for and approved by the Lane Transit District Board when compared to other positions with equal or greater authority and responsibility.

"**Section 2.**   The annual salary for the Lane Transit District general manager (as the highest paid District employee) shall not exceed $49,000. In addition, benefits provided to the general manager shall not exceed the benefits authorized for other Lane Transit District employees. It is the intent of this section to severely limit benefits to the general manager not accorded other employees.

"**Section 3.**   The $49,000 salary limitation may be increased on an annual basis in an amount not to exceed the annual increase granted

to the lowest paid, bona fide, full-time employee of the Lane Transit District.

"**Section 4.** Other than as provided in Section 3, the salary limitation may be changed only by a vote of the people at a general election.

"**Section 5.** Severability. If a court should hold invalid or unconstitutional any clause or part of this Ordinance, that holding shall not affect the remaining parts of this Ordinance that are not held invalid or unconstitutional."

(Boldface in original.) Citizens filed with the County the required number of supporting initiative petition signatures, and the County certified the measure to the local ballot.

LTD then initiated this action to prevent the measure from being put before the voters. LTD alleged that, because its board sets the general manager's salary "pursuant to its Salary Administration Policy, based on qualifications and experience, and further takes into consideration the pay scales of other general managers in similarly situated districts," the determination of the general manager's compensation is an administrative matter and therefore is not subject to the initiative power, which is reserved for municipal *legislation*. LTD further alleged that the proposed initiative effectively would amend the LTD charter, which is defined by state law. LTD alleged that because the amendment would be unconstitutional, it should not be certified to the ballot. LTD requested a declaration that the proposed initiative measure violates the Oregon Constitution. It also requested an order enjoining the County elections officer from placing the measure on the ballot.

Citizens immediately intervened. It moved to dismiss LTD's complaint on various grounds. Meanwhile, LTD moved for summary judgment. When the trial court denied Citizens' motion to dismiss, Citizens cross-moved for summary judgment. While the motions were pending, Citizens requested that LTD produce approximately 1,300 pages of documents. LTD produced the documents, along with a bill for $331.25 in copying and $1,020.41 in associated "labor costs." Citizens complained to the trial court that it could not

lawfully be required to pay labor costs associated with the production of documents. The trial court ordered the production of the documents, told Citizens to pay only the copying charges and took under advisement whether Citizens could be required to pay labor costs, as well.

The trial court ultimately agreed with LTD that the subject of the proposed initiative was not legislative in nature. The court granted LTD's motion, denied Citizens' motion and entered an order enjoining the County and its Chief Deputy Clerk from putting the measure on the local ballot. The court also ordered that, as to the "labor costs" associated with LTD's production of documents, Citizens must pay $400.

Citizens' first two assignments of error are that the trial court should not have granted LTD's summary judgment motion and instead should have granted Citizens' motion. Citizens contends that the undisputed facts demonstrate that the subject of the proposed initiative is legislative, not administrative, and that the measure therefore should be placed on the ballot. According to Citizens, the setting of salaries for government officials is an intrinsically legislative act. A "legislative" act, the intervenor argues, is one that "creates criteria of general applicability" that are "prospective and long term in effect." Citizens emphasizes that:

> "It should be noted that the initiative places no limit on the amount of compensation that can be negotiated. It establishes only a relative equality that must be maintained between the compensation of the general manager and others in the workforce."

Because the proposed initiative does not merely determine a salary for the general manager, but describes the criteria by which future salary decisions are to be made, Citizens concludes, the subject of the measure is legislative and should be put before the voters.

LTD argues that it sets the general manager's salary in the context of a "comprehensive scheme for employee positions, job descriptions, performance, review, salaries, and benefits," but it concedes that the "comprehensive scheme" does not actually determine the general manager's salary.

"This feature is conspicuous," LTD acknowledges, "but it does not leave a void in the scheme." According to the LTD, the gap in the comprehensive scheme is filled by the fact that the general manager's salary is left to the discretion of the board. Because the proposed initiative measure would constrain the exercise of the board's discretion, LTD concludes, it is not the proper subject of an initiative. The fact that the measure does not merely set a salary, but also modifies the method for determining future salaries, LTD contends, is beside the point:

> "In any form, the initiative would infringe on a completed framework, serve to implement discretion reserved to the board, and substitute an initiative for an administrative decision concerning an individual."

In the alternative, LTD argues that the initiative would be unconstitutional because it would impermissibly conflict with state statutes conferring on the board the discretion to determine the salary of the general manager and, therefore, should not be permitted to go before the voters.

■      We review trial court decisions to determine whether either party is entitled to prevail as a matter of law. *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243, *rev allowed* 323 Or 483 (1996).

Article IV, section 1(5), of the Oregon Constitution provides:

> "The initiative and referendum powers reserved to the people * * * are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district."

By its terms, the constitutional reservation of the initiative power applies only to "legislation." Initiative measures that concern matters other than "legislation" are not subject to the initiative power and properly may be precluded from being placed on the ballot. *See Boytano v. Fritz*, 321 Or 498, 501-02, 901 P2d 835 (1995).

In *Foster v. Clark*, 309 Or 464, 790 P2d 1 (1990), the Supreme Court described the basis for determining whether

the subject of a proposed measure is "legislation." To understand the court's test, some explanation of the facts of that case is required. In *Foster*, the Portland City Council passed an ordinance renaming a city street. In doing so, the council followed the procedures and decision-making criteria spelled out in an ordinance adopted several years earlier concerning the renaming of city streets. That street-naming ordinance required that streets be renamed only after a prominent person who has been dead at least five years, that streets be renamed only once each year, that the street be located entirely within the city limits, that proponents of the renaming obtain a minimum number of signatures from city residents or neighbors, that permission be obtained from the honoree's survivors, that the proponents provide a deposit to cover costs of the renaming process, that public hearings be held, and that the renaming be evaluated by a panel of historians after a survey of street residents and approved by the City Council.

A group of Portland residents opposed the renaming of the street, and they drafted a proposed initiative measure to repeal the council's decision to do so. After obtaining sufficient signatures to have the measure certified to the ballot, two residents sued to have the measure removed from the local ballot on the ground that the subject of the measure was not "municipal legislation" within the meaning of Article IV, section 1(5). The sponsors of the initiative intervened and defended the placement of the measure on the ballot, arguing that the renaming of a street is a legislative function.

The Supreme Court concluded that the measure was administrative, not legislative, and affirmed the trial court's judgment that the measure could not be placed on the ballot. The court began by acknowledging the distinction in its prior cases between an "administrative" matter, which is not properly the subject of local initiatives, and "municipal legislation," which is:

> "The limitation of the initiative and referendum powers to 'municipal legislation' has been spelled out over the years as creating a dichotomy between 'administrative' matters, as to which the initiative and referendum are not available,

and 'legislative' matters, as to which such powers are available. The distinction between 'legislative' and 'administrative' matters is the distinction between making laws of general applicability and permanent nature, on the one hand, as opposed to decisions implementing such general rules, on the other."

*Id.* at 472 (citations omitted). The court recognized that some courts in other jurisdictions had held that street renaming is inherently legislative. Nevertheless, it concluded that those authorities were not persuasive:

"We have no quarrel with those authorities, but they are not dispositive here. A city's practice of naming or renaming streets only through specific ordinances may establish that the activity is 'legislation' subject to the initiative and referendum process. Another city's practice of naming and renaming streets only through a process akin to that established for the City of Portland * * * may establish that the activity is 'administrative' and not subject to the initiative and referendum process. The point is, whether a particular municipal activity is 'administrative' or 'legislative' often depends not on the nature of the action but the nature of the legal framework in which the action occurs."

*Id.* at 474. Turning to the nature of the measure at hand, the court observed that, at the time the measure was filed, the city's decision to rename a street was subject to following a detailed process described in a street-naming ordinance. That ordinance, the court said,

"contain[s] a complete scheme for changing Portland city street names, including rules on petition forms, fees, review by various City officials, and final consideration by the City Council. This represents a completed legislative plan, requiring no further legislative contribution. Acts of renaming streets under the policies embodied in the plan thereafter become administrative acts, not legislative."

*Id.* at 473.

■      *Foster* appears to suggest that while "often" classification of a given act as "administrative" or "legislative" depends on the framework in which it occurs, sometimes the very nature of the act may be one or the other. Accordingly, we first determine whether the setting of local government

worker salaries is by its very nature "administrative" or rather is "legislation" that is subject to the initiative power.

At the outset, we note that there is a split of authority among courts in other jurisdictions that have addressed this issue. *See generally* H. A. Wood, Annotation, *Character or Subject Matter of Ordinance within Operation of Initiative and Referendum Provisions*, 122 ALR 782 (1939) ("the decided cases are in confusion on the subject, and it seems impractical to attempt to reconcile them"). It appears that a majority of states take the position that the setting of salaries is a legislative action that is properly the subject of the initiative power. *See, e.g., City of Las Vegas v. Ackerman*, 85 Nev 493, 496, 457 P2d 525, 528 (1969) ("The fixing of salaries of municipal employees in the City of Las Vegas is a legislative function. The people have the power through the initiative process to enact legislation fixing such salaries."); *Collins v. City & County of San Francisco*, 112 Cal App 2d 719, 730, 247 P2d 362, 369 (1952) ("It is settled in this State that ordinarily the fixing of salaries of municipal employees is a legislative act."). Other states have concluded that such action is administrative in nature. *See, e.g., City of Lawrence v. McArdle*, 214 Kan 862, 870-71, 522 P2d 420, 427-28 (1974) (proposal to equalize salaries of firefighters and police officers held not the proper subject of initiative power). Still others have determined that the answer depends on the extent to which the decision is a function of the application of policies and procedures that have been legislatively predetermined. *See, e.g., Shriver v. Bench*, 6 Utah 2d 329, 331-34, 313 P2d 475, 477-79 (1957) (setting of salaries by application of policy, automatically and without city council action held to be administrative in nature).

Our own courts have not addressed the precise question. There is a suggestion in an early case that the matter is legislative in nature. In *Rose v. Port of Portland*, 82 Or 541, 562, 162 P 498 (1917), the Supreme Court noted that the initial draft of the original initiative amendment was accompanied by a statement that

> " '[t]he adoption of this amendment will give the people power to control salaries of county and district officers.' "

Such a comment, while suggestive of the understanding of the voters at the time the initiative was adopted, nevertheless is too slim a reed on which to support a conclusion as to the inherent nature of the act in any absolute sense. Indeed, the Supreme Court has avoided expressly categorizing salary setting as either legislative or administrative in character. *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 287 n 3, 639 P2d 90 (1981). Moreover, it is fairly easy to envision cases in which the setting of salaries is constrained so heavily by administrative processes that it strains logic to classify them as legislative in nature. Accordingly, we decline to adopt Citizens' view that local government decisions as to salaries are inherently and unalterably legislative in character.

■    We turn, then, to the question whether the board's decisions concerning its general manager's salary are so governed by the administration of a predetermined, completed legal framework that they must be classified as administrative in nature and beyond the scope of the local government initiative process.

We conclude that they are not. To begin with, the record reveals no complete, administrative framework within which the board determines its general manager's salary. The board and the general manager have adopted a Salary Administration Policy, to be sure, but that policy expressly governs nonbargaining-unit employees *other than* the general manager. Thus, there indeed may be a complete, administrative framework within which the salaries of *other employees* are determined. The fact remains that no such framework exists for the determination of the general manager's salary. LTD concedes as much in observing that "[t]he *only* issue that is not predetermined [by the relevant statutes and the Salary Administration Policy] is the compensation of the general manager." (Emphasis in original.) LTD's assertion that the decision nevertheless is administrative in nature because, within the existing framework, the board retains the discretion to set the general manager's salary, reveals the flaw in its own argument: In setting the general

manager's salary, the board is constrained only by its discretion, not by any predetermined, detailed, complete, administrative procedure. The only constraints on the board's discretion that LTD has identified are the general principles of compensation contained in the Salary Administration Policy that compensation is to be "fair and equitable" with "due consideration" to compensation for similar positions in the marketplace. Even assuming that such general considerations can be said to meaningfully constrain the discretion of the board, they are taken into account not because they must be, but because the board, in the exercise of its discretion, chooses them to be on a case-by-case basis. The hallmark of administrative decisions, the court said in *Foster*, is that they simply implement preexisting, permanent policy choices; that is not the case here.

■ Moreover, even accepting for the sake of argument that the board is constrained to apply the general principles expressed in the Salary Administration Policy in setting the general manager's salary, the fact remains that the subject of the proposed initiative is a modification of those decision-making criteria. The proposed measure does not merely set a new salary for the general manager. It prescribes the rules by which the salary is to be set in the future. It imposes no absolute limit on future salary increases. It imposes a general policy that any such increases must be equal to salary increases in the general workforce and provides a mechanism for awarding salary increases in excess of that amount.

The language of the proposed initiative itself demonstrates the point. After announcing the base salary for the general manager, section 2 of the proposed ordinance provides that:

> "In addition, benefits provided to the general manager shall not exceed the benefits authorized for other Lane Transit District employees. *It is the intent of this section to severely limit benefits to the general manager not accorded other employees.*"

(Emphasis supplied.) Thus, the focus of the proposed measure is not merely the salary of the general manager but the *relationship* between the salary of the general manager and all other employees.

The point is further emphasized in section 3, which provides:

"The $49,000 salary limitation may be increased on an annual basis in an amount not to exceed the annual increase granted to the lowest paid, bona fide, full-time employee of the Lane Transit District."

Thus, again, the measure amounts to more than repealing a particular decision of the board. Instead, it changes the method by which future decisions are to be made, by tying any future increases in general manager salaries to increases in the salaries of other employees.

Section 4 of the proposed measure similarly provides:

"Other than as provided in Section 3, the salary limitation may be changed only by a vote of the people at a general election."

Here again, the focus of the proposed initiative is not on the salary of an individual at a particular point in time, but rather a change in the method by which salary decisions are to be made in the future. Indeed, in this respect, Section 4 of the proposed measure recalls the facts of *State ex rel Allen v. Martin*, 255 Or 401, 408, 465 P2d 228 (1970), in which the court classified as legislative a proposed measure that would have made the creation of local parking districts contingent upon approval of a majority of the property owners within the district. So also in this case, the proposed measure reserves a class of decisions to a vote of the people at a general election.

LTD complains that the proposed measure must be considered administrative in nature, because not doing so would necessitate reorganization of the management of the district and would affect the efficiency and economy of its operations. That may well be so. Enforcement of the measure likewise could create pressure to alter the salaries of other employees, including those subject to the Salary Administration Policy and collective bargaining agreements. But such consequences only demonstrate that the effect of the proposed measure is not limited to second-guessing the bottom-line decision of the board in an individual instance. It instead would change, directly or indirectly, the manner in which all

future salary decisions regarding district employees are made. It is the equivalent of changing the street-naming policy in *Foster*, as opposed to challenging the Portland City Council's application of the policy itself. The subject of the proposed initiative, therefore, is legislation, and the trial court erred in concluding otherwise.

■     LTD's alternative argument is that the measure should not be allowed on the ballot because it purports to amend state law. According to LTD, the measure is not the proper subject of the local initiative power, because

> "an initiative that seeks to limit a board's discretion in hiring its key employee impermissibly contravenes the [state] statutes conferring authority to contract with employees generally and appoint a general manager in particular."

We addressed, and rejected, the same argument in *Boytano v. Fritz*, 131 Or App 466, 886 P2d 31 (1994), *aff'd* 321 Or 498, 901 P2d 835 (1995). In that case, the plaintiffs argued that a local initiative relating to homosexual rights could not be placed on the ballot because it contravened a state statute prohibiting the enactment of any local ordinances that either grant special rights or single out citizens on the basis of sexual orientation. The plaintiffs contended that, because the state legislature had effectively preempted the subject of the local initiative, that subject could no longer be regarded as "municipal" in character. We held that "the enactment of preempting legislation does not have the effect of withdrawing a matter from the scope of the people's constitutional initiative and referendum rights." *Id.* at 474. Relying on a long line of prior Supreme Court case law, we held that the question whether a local proposed measure has been preempted by an existing state statute is a question that goes to the substantive validity of the proposed measure and it, therefore, is answerable on judicial review only if the measure is actually enacted by the voters. *Id.* at 473-75. *See also Oregon AFL-CIO v. Weldon*, 256 Or 307, 312, 473 P2d 664 (1970) ("We have repeatedly held that the courts are without power to determine the validity of a proposed law or ordinance before its enactment."). Accordingly, until the present measure is enacted, it is premature for this court to rule on LTD's alternative argument.

Citizens' final assignment of error is that the trial court lacks authority to require it to pay, in addition to copying costs, the "labor costs" associated with responding to a request for the production of documents. LTD offers a two-pronged defense of the trial court's order. First, LTD argues, the charges are authorized by the public records statute, ORS 192.440, which allows the custodian of public records to establish fees for its "actual cost" in making the records available. Second, LTD argues, ORCP 36 C provides that the court may order a requesting party to pay "reasonable expenses incurred in * * * responding to the request for discovery." We agree with Citizens that the trial court in this case lacked authority to require the payment of "labor costs" associated with the production of documents.

■ We review the trial court's decision to award discovery costs for an abuse of discretion. *Farmers Ins. v. Hansen,* 46 Or App 377, 380, 611 P2d 696 (1980). It is, however, an abuse of discretion to act without authority. *See, e.g., State v. Caffee,* 116 Or App 23, 28, 840 P2d 720 (1992), *rev den* 315 Or 312 (1993).

■ LTD's reliance on the public records statute is misplaced. The statute applies to public records requests initiated pursuant to ORS chapter 192. In this case, Citizens filed a garden-variety request for documents pursuant to ORCP 43. LTD cites no authority for its assertion that, merely because it is a public body, all of its responses to discovery requests in the course of litigation are subject to the public records statutes. We likewise are aware of no such authority.

■ LTD's reliance on ORCP 36 C is equally misplaced. It authorizes a party to seek a protective order from the trial court limiting discovery or ordering the payment of reasonable expenses incurred in responding to a discovery request. In this case, there is no such motion in the trial court record. There was, however, some sort of oral colloquy on the matter before the trial court, which prompted the court to take the matter of "labor costs" under advisement. We assume, therefore, that a motion for a protective order was interposed. Nevertheless, we conclude that the rule does not authorize the award of labor costs.

ORCP 36 C offers a means by which a party may seek *to avoid* unreasonable costs in responding to a request for discovery. It does not provide a safe haven for parties who determine on their own to incur the costs and then recover them without providing the court and the other parties an opportunity to prevent them from being incurred in the first place. *See U.S. v. Van Horn*, 156 FRD 231, 233 (D Or 1994) (public body cannot require payment for copying costs where records first were not made available without copying). In this case, LTD incurred the expenses associated with producing the documents that Citizens requested. Only later, after the documents had been assembled and copied, did it seek a protective order from the court. The rule does not authorize an award of costs under such circumstances.

Reversed and remanded.

**LEESON, J.,** concurring in part; dissenting in part.

I concur with the majority's conclusion that the trial court erred in requiring Citizens for Responsible Public Transit (Citizens) to reimburse Lane Transit District (LTD) for "labor costs" incurred in responding to Citizens' document production request. However, I disagree with the majority that Citizens' proposed initiative is municipal legislation and would affirm the trial court's grant of summary judgment to LTD.

The majority concludes that Citizens' proposed initiative is legislation, because the majority finds no completed legal framework within which the general manager's salary must be set. Alternatively, the majority holds that even if such a framework exists, Citizens' proposed initiative modifies that framework, and the modification is legislative in nature. Consequently, the majority concludes that the proposed measure is a proper subject for an initiative. In my view, the majority's focus is misplaced. Article IV, section 1(5), of the Oregon Constitution reserves to the people the initiative and referendum powers regarding municipal "legislation." Whether a completed legal framework exists in this case is therefore beside the point. The dispositive question is whether Citizens' proposed initiative is legislation.[1] For the reasons that follow, I conclude that it is not.

---

[1] Citizens' proposed initiative provides:

Legislation makes new law, *Monahan v. Funk*, 137 Or 580, 584-85, 3 P2d 778 (1931), and relates to matters of general applicability, *Foster v. Clark*, 309 Or 464, 472, 790 P2d 1 (1990). It is well established that legislation is something permanent, uniform and universal, not something sudden or transient concerning a particular person. *Long v. City of Portland*, 53 Or 92, 100-01, 98 P 1111 (1909). Citizens' proposed initiative does not meet those criteria. If passed by the voters, the initiative would not make new law of general applicability and permanent nature. Rather, it would concern only a particular person, the general manager of LTD.

Section 1 of the measure provides that "[t]he *qualifications* do not justify the salary and benefits provided for * * * when compared to other positions with equal or greater authority and responsibility." (Emphasis supplied.) That language plainly targets the current general manager. Only a person can have "qualifications"—an abstract post or position cannot. *See Webster's Third New International Dictionary* 1858 (3d ed 1976) ("qualification" is "an endowment or acquaintment that fits a *person* (as for an office)"). (Emphasis supplied.) Section 1 declares that the current general manager does not deserve her present salary. Because the proposed initiative targets a particular person, it cannot

---

| | |
|---|---|
| "**Section 1.** | The qualifications do not justify the salary and benefits provided for and approved by the Lane Transit District Board when compared to other positions with equal or greater authority and responsibility. |
| "**Section 2.** | The annual salary for the Lane Transit District general manager (as the highest paid District employee) shall not exceed $49,000. In addition, benefits provided to the general manager shall not exceed the benefits authorized for other Lane Transit District employees. It is the intent of this section to severely limit benefits to the general manager not accorded other employees. |
| "**Section 3.** | The $49,000 salary limitation may be increased on an annual basis in an amount not to exceed the annual increase granted to the lowest paid, bona fide, full-time employee of the Lane Transit District. |
| "**Section 4.** | Other than as provided in Section 3, the salary limitation may be changed only by a vote of the people at a general election. |
| "**Section 5.** | Severability. If a court should hold invalid or unconstitutional any clause or part of this Ordinance, that holding shall not affect the remaining parts of this Ordinance that are not held invalid or unconstitutional." |

(Boldface in original.)

relate to matters of general applicability and is neither permanent nor universal. Therefore, it is not legislation.

Section 2 also targets the general manager, by reducing her salary to $49,000 per year and limiting the benefits provided to her. Section 3 allows LTD's board of directors to raise the general manager's salary annually, but by no more than the raise received by the lowest paid LTD employee. That restriction effectively freezes the general manager's salary. The general manager would never receive more than a minimal raise, regardless of her performance, because under LTD's Salary Administration Policy, the lowest paid employee cannot receive an annual raise of more than 6 percent. For example, if the lowest paid employee is paid minimum wage, works full time, and performs exceptionally well, he or she would be entitled to a raise of no more than $600. Under the terms of the proposed initiative, the board could only raise the general manager's salary an equivalent amount, or less than 1 percent. Conversely, if the lowest paid employee performs poorly, he or she could suffer a pay cut of almost $500. Under the terms of the proposed initiative, the board then could not raise the general manager's salary at all. Sections 2 and 3 thus cut and effectively freeze the current general manager's salary and benefits. The majority's analysis notwithstanding, that is not legislation. Rather, it is an attempt by Citizens to have the voters micromanage LTD's salary decisions regarding its general manager.

I also disagree with the majority's conclusion that the focus of the proposed measure is "the *relationship* between the salary of the general manager and all other employees." 146 Or App at 120 (emphasis in original). The measure is not aimed at establishing relative pay equity between the general manager and other LTD employees. Although it expressly limits the general manager's salary, it says nothing about the salary determination of any other LTD employee. Contrary to the majority's conclusion, the measure has no effect on other employees' salaries, which remain governed by the Salary Administration Policy. The measure targets only the general manager's salary.

In short, I do not read Citizens' proposed initiative as municipal legislation. Consequently, I would affirm the summary judgment for LTD that the proposed initiative does not qualify for the ballot.